BELL *v.* HOWE.

HOWE *v.* BELL.

*(Supreme Court, General Term, Fifth Department.　June, 1892.)*

1. EJECTMENT—TITLE TO SUPPORT—EVIDENCE.

A. subdivided land which he had mortgaged, and conveyed lot 4 in accordance with a map whereon it was designated as bounded on the south by lot 20, which was 90 feet wide, and fronted on the east.　Afterwards another map was made, on which was indicated an alley 15 feet wide across the northern edge of lot 20, and a deed was executed making such alley appurtenant to lot 20 and certain other lots, but not to lot 4.　On foreclosure of the mortgages, lot 20 was sold, the deed describing it as 75 feet wide, in accordance with the second map; and plaintiff acquired the title of the purchaser by mesne conveyances.　Plaintiff also acquired the title, if any, of A. to the strip of land dedicated as an alley, which was abandoned as such, by mesne conveyances from A.'s son, to whom it was conveyed by A.'s assignee for the benefit of his creditors.　*Held,* that plaintiff was entitled to recover such strip.

2. ADVERSE POSSESSION—WHAT CONSTITUTES.

No title to the same was acquired by the possession, for less than 20 years, of one to whom the title to lot 4 had passed by successive conveyances.

3. WITNESS—COMPETENCY—TITLE TO LAND OF DECEASED GRANTOR.

The testimony of A.'s son as to conversations with his father, who was dead, in regard to the preparation of the maps, was not inadmissible because of the provision of Code Civil Proc. § 829, that a person through whom a party derives "his interest or title" shall be incompetent as a witness "in his own behalf or interest, or in behalf of the party succeeding to his title or interest," against "a person deriving title" through "a deceased person."

· Appeal from judgment on report of referee.

Action by Alfred Bell against John H. Howe to enjoin defendant from interfering with plaintiff's possession of certain land, and an action in ejectment by John H. Howe against Alfred Bell to recover possession of the same. From a judgment dismissing the complaint in the first action, and one for plaintiff in the second, Bell appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

J. Van Voorhis, for appellant. Nathaniel Foote, for respondent.

LEWIS, J. The subject-matter in dispute in these actions is a piece of land situated in the city of Rochester, 15 feet wide, and about 150 feet in depth, lying between the residence of the appellant, situated on the corner of East avenue and Goodman street, in the city of Rochester, and the residence of the respondent, fronting upon Goodman street, in the rear of appellant's lot. Both homesteads are a part of the "Arnold Tract," so called, and the land in dispute was called and known on the trial as "The Alley." Each party claims it as a part of his lot.

The facts material to the decision of these appeals, and as found by the referee, are as follows: William E. Arnold is the common grantor of the parties. In May, 1853, he became the owner of a tract of land in the city of Rochester which he subsequently designated as the "Arnold Tract," and which included the alley in controversy in this action, and the homestead premises now occupied by each of the parties to these actions, together with other lands. Arnold entered into possession of the tract, and on or about the 28th day of July, 1853, he subdivided the tract into 25 lots, separately numbered them, and caused to be made and filed in the Monroe county clerk's office a map of said tract, showing his subdivision thereof into said lots, and the location and dimensions of each lot. According to such subdivision and allotment, lot No. 4 (appellant's lot) fronted upon the southerly side of East avenue, corner of Goodman street, and extended southerly along the westerly side of Goodman street, 425 feet, to the northerly side of lot No. 2. Its southerly end was 128 feet 3 inches wide. According to such subdivision and allotment, lot No. 20 fronted upon Goodman street, was 90 feet in width upon Goodman street, and 90 feet in width in the rear, and on its northerly line 158 feet 3 inches in depth, and adjoined lot No. 4. After the making of said allotments, and the filing of said map, and on or about August 1, 1853, Arnold conveyed to George C. Buell lot No. 4, according to said subdivision, and as shown upon said map, and, by the description in the deed, lot No. 4 was bounded on the south by the north line of lot No. 20. Afterwards, and on or about September 28, 1853, Arnold made, and afterwards filed in the Monroe county clerk's office, another map of said allotment and subdivision of the Arnold tract, upon which he indicated an alley or passageway across the northerly side of lot No. 20 from Goodman street westerly to the rear of said lot, 15 feet in width. At the west end of lot 20 it turned at right angles southerly, and extended along the rear of said lot No. 20, and in the rear of other lots of said tract, also fronting upon Goodman street. Arnold, on said 29th day of September, 1853, executed, and caused to be recorded in the Monroe county clerk's office, an instrument under his hand and seal, being a dedication deed, in and by which it was recited, among other things, that, as the proprietor of said Arnold tract, he had caused the same to be subdivided into lots according to the plan or specification made by James M Bruff, city sur-

veyor, dated July 28, 1853, filed in said clerk's office; and that for the benefit and use of the purchasers of lots on said tract, and in explanation of said map, he declared, among other things, that said passageway—meaning the alley way, of which the premises in dispute was a part—indicated on said map represented an alley for the use of owners of certain lots specified by their numbers, among which were lots numbers 20, 16, and 22. But neither lot No. 4, nor lot No. 3, adjoining lot No. 4 upon the west, was mentioned in said dedication deed. The deed further provided that gates should be erected at the entrance of said alley on Goodman street.

There was sufficient evidence to sustain the foregoing facts as found by the referee. By various mesne conveyances the title to lot No. 4 became vested in the appellant about September 27, 1870. The evidence failed to show the precise time of the filing of the map referred to in the deed from Arnold to Buell of lot No. 4. It was, however, shown by the testimony of Hobart G. Arnold, a son of William E. Arnold, that it was filed in the clerk's office prior to the conveyance of No. 4 by his father, and that the map upon which the alley was designated was filed after his father had conveyed lot No. 4 to Buell. Both maps bore the same surveyor's date, (July 28, 1853,) showing, as testified to by Hobart, that there was but one survey made.

There was in the handwriting of William E. Arnold, upon the face of the map referred to in the dedication deed, the words and figures following: "Dated September 28, 1853. WILLIAM E. ARNOLD,"—satisfactorily establishing that he had a copy of the original map made, upon which he caused to be designated the alleys, and also showing the time it was made, and became, for the purposes of the alley, a map. There was evidence tending to show that the second map was filed on the 28th day of September, 1853. While the alley in controversy, as indicated upon the map, adjoins the south end of lot No. 4, lot No. 4 got no rights or easements in the alley by the dedication deed. The appellant's immediate grantors were Sarah H. Van Epps and her husband, John C. Van Epps; Mrs. Van Epps being the owner of the lot. Van Epps was, at the time of his joining in the deed of this lot to the appellant, the owner of lots in the Arnold tract fronting upon and having an easement in the alley, as designated in the map referred to, and he had, in common with others, including the occupant of lot No. 20, prior to and during the time his wife owned the fee to lot No. 4, occupied the alley in controversy. The evidence as to the character of the occupation of the part of the alley in controversy was quite conflicting, the appellant claiming that his grantors were in the exclusive possession thereof, but the respondent's evidence tended to show that lot No. 20 enjoyed the same privileges of the alley as other lots did. No part of the alley designated upon the map, except the part thereof in controversy, was ever opened or used. The portion of the alley adjoining the lots conveyed, with the exception of the piece in controversy, was incorporated into the adjoining lots as they were conveyed and occupied; and the scheme of the alleys seems to have been, by common consent, practically abandoned,—in fact, it was never adopted by the grantees of the lots.

It is quite clear that the appellant failed to establish any paper title to the land in controversy. He sought, however, upon the trial, to establish a prescriptive title. The referee decided, we think correctly, that he had failed to show a prescriptive title. His possession was not of sufficient duration, or of a character to give him title by adverse possession. He entered into possession of lot No. 4 on September 20, 1870, and brought this action on the 6th of September, 1889. The respondent's action against the appellant was commenced within less than 20 years from the time of the date of appellant's deed. The appellant took no title by the quitclaim deed from Mrs. Van Epps, for neither she nor her husband had any title to the alley to convey, except a possible easement therein arising from the ownership of other lots adjoining

the alley as projected.     We fully concur in the findings of the learned referee that the appellant failed to make a case, and that his complaint was properly dismissed.

Action No. 2 was commenced July 1, 1890.     William E. Arnold, the common grantor, took title to the entire tract, subject to two purchase-money mortgages.     These mortgages were liens upon the whole tract, including lot No. 20.     They were subsequently foreclosed, and judgments obtained, and lots 1, 20, 21, and 22, in said tract, were sold upon the foreclosure sale to Samuel Yeomans.     The respondent's lot was described in the referee's deed as lot No. 20 on the Arnold map, made July 28, 1853, and filed in the clerk's office September 30, 1853.     This reference evidently was to the map referred to in the dedication deed, and, as we have seen, on that map the alley in question was indicated, and lot No. 20 appeared upon this map as being only 75 feet wide. The mortgages, as we have seen, covered the lot as designated upon the first map, being 90 feet in width, and the alley appeared upon the second map as laid across the north side of lot No. 20.     It is the contention of the respondent that the fee to lot No. 20, as designated upon the first map, passed by the sale under the foreclosure judgments.     The title acquired to lot No. 20, under the foreclosure sale, by several mesne conveyances became vested in the respondent; and, if the sale under the foreclosure judgment carried the title to the whole 90 feet, he became thereby vested with title to the lot as indicated upon the first map.     If, however, the fee to the alley did not pass by his conveyance, it remained in William E. Arnold; and the evidence shows that Arnold, prior to the sale of this lot under the foreclosure judgment, executed a general assignment of all his real and personal estate to Silas O. Smith and Theodore Church for the benefit of his creditors.     The title to the land in dispute passed to the assignees under the assignment, and was thereafter conveyed by them to Hobart G. Arnold, and by him, through various conveyances, became vested in the respondent, and he became, as found by the referee, the owner of lot No. 20 as laid out and designated upon the first map, which included the fee to the alley in question; and, as the use of it as an alley had been abandoned, he was entitled to recover possession of it as against the appellant.

We have examined the numerous exceptions taken by the appellant to the admission and rejection of evidence.     The testimony of the witness Hobart G. Arnold, relating to conversations with his father as to the preparation of the maps, was, we think, competent, as a part of the history of the preparation and filing of the maps.     The objection that he was an incompetent witness, under section 829[1] of the Code, cannot avail; for, as we have seen, the conversation related solely to the title to the alley, and, the appellant having no title to it, he did not derive title from a deceased grantor. We find nothing in the exceptions of the appellant justifying the granting of a new trial.     The judgments appealed from should be affirmed, with costs.     All concur.

---

[1] Section 829 provides that, "upon the trial of an action, * * * a party or person interested in the event, or a person through or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined as a witness, in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against * * * a person deriving his title or interest from, through, or under a deceased person," etc.